Brenda JOHNSON, et al., Plaintiffs,

v.

DESOTO COUNTY BOARD
OF COMMISSIONERS,
et al., Defendants.

Helen WASHINGTON, et al., Plaintiffs,

v.

ARCADIA CITY COUNCIL,
et al., Defendants.

Nos. 90–366–CIV–FTM–17,
91–40–CIV–FTM–17.

United States District Court,
M.D. Florida,
Fort Myers Division.

Nov. 9, 1994.

James Arnold Tucker, Florida Rural Legal Services, Fort Myers, FL, Neil Bradley, Atlanta, GA, Cristina Maria Correia, Florida Rural Legal Services, Inc., Tallahassee, FL, and Robert McDuff, Law Office of Robert McDuff, Jackson, MS, for plaintiffs.

Robert M. Fournier, Fournier, Pretschner & Rowell, P.A., Sarasota, FL, for defendants.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

THIS CAUSE is before the Court on Motions for Summary Judgment in each of the above consolidated cases. Because of the overall effect of this Court's ruling on these Motions, they will be considered together.

## 1378

### SUMMARY OF BACKGROUND

Plaintiffs in both cases allege that Defendants' multi-district, at-large election method denies them the opportunity to participate on an equal basis with white citizens, in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 (hereafter § 2), and the First, Thirteenth, Fourteenth and Fifteenth Amendments of the United States Constitution. Plaintiffs in both cases seek declaratory and injunctive relief.

Plaintiffs in Case No. 90–366–CIV–FTM–17 (hereafter 90–366) filed a Motion for Summary Judgment (Docket No. 32) on August 17, 1992, to which Defendants filed a Memorandum in Opposition (Docket No. 39) on October 28, 1992. Defendants in Case No. 91–40–CIV–FTM–17 (hereafter 91–40) filed a Motion for Summary Judgment (Docket No. 35) on May 4, 1992, to which the Plaintiffs filed a Memorandum in Opposition (Docket No. 46) on June 19, 1992.

 Summary judgment is appropriate when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is genuine, and summary judgment inappropriate, if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### I. CASE NO. 90–366, DESOTO COUNTY

#### A. *The Contested Issue.*

Plaintiffs focus their Motion for Summary Judgment on the alleged violation of § 2, and specifically do not address their Constitutional claims under the First, Thirteenth, Fourteenth and Fifteenth Amendments to the United States Constitution. The issue on this Motion is whether proof of discriminatory intent in the enactment of the challenged State statute is sufficient to find a violation of § 2 without demonstrating present day effects.

#### B. *Arguments.*

Plaintiffs assert that a violation of § 2 of the Voting Rights Act is established by showing discriminatory intent, without the necessity of showing present day effects. Plaintiffs contend that two precedent cases establish the discriminatory intent of the Florida Legislature in the 1947 enactment of §§ 230.08 and 230.10, Florida Statutes, which authorize an at-large election method for School Board members. Thus, because discriminatory intent is proven, Plaintiffs claim they are entitled to summary judgment without showing present day effects of the statutes.

Alternatively, Plaintiffs argue that if a showing of present day effects is required it need only be minimal, and does not have the meet the "necessary preconditions" results test established by the United States Supreme Court in *Thornburg v. Gingles,* 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986).

Defendants argue that the results test established in *Gingles* (see discussion in Part II, *infra*) is dispositive of a § 2 claim, and that intent is irrelevant if there are no present day effects. Defendants further claim that the precedent cases cited by Plaintiffs do not apply in this case for two reasons: 1) the cases involved findings of fact, not interpretations of law, and therefore cannot be extended to DeSoto County because it was not a party to those cases, and 2) the findings of those cases are mere hearsay for which there is no exception, and thus they are inadmissible as evidence.

#### C. *Discussion.*

 Under a Fourteenth Amendment analysis, precedent clearly establishes that Plaintiffs would be required to show both discriminatory intent and current disproportionate impact. *Rogers v. Lodge,* 458 U.S. 613, 102 S.Ct. 3272, 73 L.Ed.2d 1012 (1982); *NAACP v. Gadsden County School Board,* 691 F.2d 978 (11th Cir.1982). However, there are no precedent cases which discuss the requirements, if any, of showing present day effects under a § 2 analysis when discriminatory intent is proven.

■ This Court is persuaded that proof of discriminatory intent is sufficient to establish a § 2 violation. First, the Legislative intent behind the 1982 amendments to § 2 was to restore the results test, which was rejected by the Supreme Court's holding in *City of Mobile v. Bolden,* 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980). In *Bolden,* the Court held that § 2 required proof that the contested electoral practice or mechanism was adopted or maintained with the intent to discriminate against minority voters. *Bolden,* 446 U.S. at 66, 100 S.Ct. at 1499. In amending § 2 to restore the results test, the Legislature did not foreclose discriminatory intent as a method of proving a § 2 violation. The 1982 amendments, in response to *Bolden,* simply restored the results test as a method for demonstrating a § 2 violation without the necessity of establishing discriminatory intent.

In fact, the Senate Report, S.Rep. No. 417, 97th Cong.2d Sess., U.S.Code Cong. & Admin.News 1982, p. 177, which accompanies the amendments specifically adopts the standard for proving discriminatory intent established in *Village of Arlington Heights v. Metro. Housing Dev. Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). The adoption of such a standard is a clear indication by the Legislature that proof of discriminatory intent may be used to establish a violation of § 2.

■ Additionally, in reviewing a challenge to § 5 of the Voting Rights Act, the Supreme Court in *City of Richmond v. U.S.,* 422 U.S. 358, 95 S.Ct. 2296, 45 L.Ed.2d 245 (1975), stated: "An official action, whether an annexation or otherwise, taken for the purpose of discriminating against Negroes on account of their race has no legitimacy at all under our Constitution or under the statute." Therefore, proof that a state action was taken for the purpose of discrimination renders the action invalid under the Voting Rights Act. *See also Johnson v. DeGrandy,* — U.S. —, —, 114 S.Ct. 2647, 2661, 129 L.Ed.2d 775 (1994) (citing this proposition with approval in a § 2 challenge).

Consequently, this Court holds that proof of discriminatory intent is sufficient to establish a violation of § 2 of the Voting Rights Act.

In their Motion for Summary Judgment, the Plaintiffs point to the cases of *McMillan v. Escambia County,* 638 F.2d 1239 (5th Cir. 1981), and *NAACP v. Gadsden County School Board,* 691 F.2d 978 (11th Cir.1982). In *McMillan,* the former Fifth Circuit conducted an exhaustive review of the history of §§ 230.08 and 230.10, Florida Statutes, which established the at-large method of electing School Board officials, and found that they were adopted with invidious racially discriminatory purpose. The Eleventh Circuit relied on the precedent set in *McMillan* when it reviewed a similar challenge in *Gadsden.* Plaintiffs in this case ask this Court to abide by these precedents.

Defendants, however, argue that *McMillan* and *Gadsden* are not applicable to them because the Courts' findings were not interpretations of law, but rather findings of fact. Thus, Defendants argue, since they were not parties to those actions, the cases are not binding precedent and constitute mere hearsay for which there is no exception.

■ *McMillan* and *Gadsden* both involved Fourteenth Amendment challenges to Florida's at-large election statutes. Therefore, the findings in those cases consisted of two parts. The first involved the constitutionality of the Florida statutes. Because the history of the statutes clearly showed that they were enacted for invidious racially discriminatory purposes, the *McMillan* Court found the statutes unconstitutional. The *Gadsden* Court followed the precedent. An appellate court's finding that a statute is unconstitutional is an interpretation of constitutional law, which is binding precedent and is therefore relevant and applicable in the instant case. This Court will not re-visit the issue.

■ The second finding in both *McMillan* and *Gadsden* was that the unconstitutional statutes had current differential impact in both counties. That is a finding of fact which cannot be extended to DeSoto County. Defendants' argument is flawed, however, because the Motion under consideration here is not a Constitutional attack; Plaintiffs challenge only § 2. The precedent established in

*McMillan* and *Gadsden* regarding the unconstitutionality of §§ 230.08 and 230.10, Florida Statutes, applies in this case as proof of invidious racially discriminatory intent. Because this Court holds that proof of current effects is not required under a § 2 analysis where proof of discriminatory intent is demonstrated, Plaintiffs have established a *prima facie* violation of § 2.

However, even if proof of current effects was necessary, this Court agrees with Plaintiffs' position that it need only be minimal, and "may be met by *any evidence* that the challenged action is having significant adverse impact on black persons today." *Dillard v. Baldwin County Board of Education*, 686 F.Supp. 1459, 1467–8, n. 10 (M.D.Ala.1988) (emphasis in original). *See also Hunter v. Underwood*, 471 U.S. 222, 227, 105 S.Ct. 1916, 1919–20, 85 L.Ed.2d 222 (1985) (evidence that African–Americans were 1.7 times as likely as whites to be disenfranchised under racially motivated provisions was sufficient evidence of present day effects). The necessary preconditions of the *Gingles* results test apply when proof of intent is not shown, as it has been in this case. Defendants' arguments for requiring Plaintiffs to meet these preconditions, even in the face of proof of discriminatory intent, is contrary to the Supreme Court's finding in *De-Grandy* that "there is no indication that Congress intended to mandate a single, universally applicable standard for measuring undiluted minority voting strength, regardless of local conditions and regardless of the extent of past discrimination against minority voters in a particular State or political subdivision." *Id.* at ——, n. 17, 114 S.Ct. at 2661, n. 17.

Therefore, even if minimal current results evidence would be required, Plaintiffs in this case have met the standard. The record is replete with evidence of past discrimination. (Joint Pre–Trial Memorandum, pgs. 106–117). Defendants do not deny this evidence. They simply attempt to gloss over its importance by claiming that it is irrelevant to a voting dilution claim. (Joint Pre–Trial Memorandum, pgs. 119–120). This Court does not agree, based on the Supreme Court's mandate in *Gingles*, 478 U.S. at 80, 106 S.Ct. at 2781–82, that a voting dilution claim requires an inquiry into the totality of the circumstances, and where the Court further stated:

> A definition of racially polarized voting which holds that black bloc voting does not exist when black voters' choice of certain candidates is most strongly influenced by the fact that the voters have low incomes and menial jobs—when the reason most of those voters have menial jobs and low incomes is attributable to past or present racial discrimination—runs counter to the Senate Report's instruction to conduct a searching and practical evaluation of past and present reality, and interferes with the purpose of the Voting Rights Act to eliminate the negative effects of past discrimination on the electoral opportunities of minorities.

*Gingles*, 478 U.S. at 64–65, 106 S.Ct. at 2773–74. Plaintiffs' evidence of past discrimination and the current status of African–Americans in DeSoto County must be considered in conjunction with and in relation to the present day effects evidence. A few examples of present day effects include: 1) there has never been an African–American candidate for the Board of Commissioners; 2) only two African–Americans have run for county-wide public office in DeSoto County, losing both times; 3) there have been no African–American applicants for DeSoto County Administrator or County Attorney, and no African–American has served in either capacity (Docket No. 64, pgs. 29–30); 4) 75% of African–Americans who are school board employees are aides or service workers; 5) African–American teachers have decreased in number each year between 1987–90; and 6) African–American full-time school board employees have decreased in number each year between 1987–90 (Joint Pretrial Memorandum, pgs. 115–116). This evidence is more than minimally sufficient, in combination with Plaintiffs' proof of discriminatory intent, to establish a § 2 violation.

Therefore, in Case No. 90–366, summary judgment is appropriate as to the at-large method of electing the School Board. Plaintiffs have submitted two single-district plans, one of which is opposed by Defendants. Thus, the parties will have ten (10)

days from filing of this Order to agree upon a single-district plan and submit it for this Court's approval. If the parties fail to agree, Plaintiffs will thereafter have ten (10) days to submit its proposed plan to this Court, and Defendants will have ten (10) days thereafter to file its objections and an alternative plan. DeSoto County is hereby enjoined from using the at-large method, pursuant to §§ 230.08 and 230.10, Florida Statutes, for future elections of School Board members.

However, *McMillan* and *Gadsden* relate only to the statutes providing for at-large election of School Board members. The County Commission members are elected pursuant to Section V of Article 6 of the Florida Constitution, and Plaintiffs have not shown discriminatory intent as to that provision. Nor have they established the requisite proof to meet the necessary preconditions of the *Gingles* results test when all the evidence is viewed in a light favorable to the Defendants. Therefore, at a trial on the merits, Plaintiffs will have to prove either discriminatory intent as to Section V, or meet the results test pursuant to *Gingles*.

## II. CASE NO. 91–40, CITY OF ARCADIA

### A. *The Contested Issue.*

This sole issue on the instant motion is whether the Plaintiffs have established the existence of a genuine dispute as to the third necessary precondition established in *Thornburg v. Gingles*, 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986).

### B. *Arguments.*

Defendants, City of Arcadia et al., assert they are entitled to summary judgment because Plaintiffs cannot meet the third "necessary precondition" to a § 2 claim. Defendants concede the first two preconditions: 1) that African–Americans have sufficient numbers and are sufficiently geographically concentrated to constitute a majority of the voting age population in a single member district, if Arcadia were to be divided into five single member districts as proposed by Plaintiffs; and 2) that African–American voters in Arcadia are at least minimally politically cohesive.

Defendants claim, however, that Plaintiffs cannot establish the third *Gingles* prerequisite because Plaintiffs cannot prove that a white bloc voting majority (polarized voting) has usually defeated the candidates of choice of African–American voters in Arcadia. Defendants rely primarily on the election of Mr. Eugene Hickson to the Council in 1971, and his subsequent election in every voting year in which he was up for reelection. Thus, Defendants claim, a majority white bloc has not defeated the candidate of choice of Arcadia's African–American citizens for more than twenty-one years. Further, Defendants allege that because African–Americans represent 26% of the voting age population of Arcadia, and Mr. Hickson is one of five elected members to the Council, African–Americans are proportionately represented and have no "right," under § 2, to the two (2) seats that a single-district plan might afford them.

Defendants also rely on the 1991 election of Dr. Roosevelt Johnson, "the second black candidate to be elected to the Arcadia City Council." (Docket No. 35, p. 10). Defendants place a good deal of emphasis on the fact that, with Dr. Johnson's election, African–Americans now comprise 40% of the City Council. Further, Defendants contend that because there is no genuine dispute whether these Councilmen were African–American voters' candidates of choice, Defendants are entitled to summary judgment based on the third *Gingles* precondition.

Additionally, Defendants state that the record of African–American candidates' success in Arcadia is not accountable to "special circumstances," even though Mr. Hickson ran as an incumbent in four elections, and ran unopposed in the fifth, and even though Dr. Johnson was elected after this litigation began. Each of these situations was specifically identified by the *Gingles* Court as "special circumstances."

Plaintiffs' claim is that the multi-district, at-large election device deters African–Americans from running for office, and thus under § 2, "the political processes leading to nomination or election ... are not equally open to participation" by the minority (Docket No. 46, p. 3). The basis of Plaintiffs' argument is

that, while African–Americans represent 30% of Arcadia's population, only four (4) African–American candidates have ever run for City Council, compared to fifty-seven (57) whites, for a total of fifty-four (54) seats since 1963.

Plaintiffs also take exception to Defendants' use of the voting age population of Arcadia (26% African–American) as the basis for concluding that one elected African–American councilman proportionately represents the African–American community. Plaintiffs contend that the total population is the proper basis, and that African–Americans constitute 30% of the total population of Arcadia.

Further, Plaintiffs rely on the "totality of the circumstances" doctrine of *Gingles* for the proposition that social and historical conditions interact with election structures and must be taken into account in determining the effect and significance of polarized voting.

## C. *Discussion.*

Defendants' memorandum interprets the third precondition too narrowly and simplistically in light of the Supreme Court's discussion of polarized voting in *Gingles*. Further, Defendants' Motion for Summary Judgment does not address the core of Plaintiffs' complaint, which is that polarized voting, combined with historical aspects and current effects of discrimination, act as a bar to African–American candidates' *nomination* for election to the city council.

In *Gingles* 478 U.S. at 57–58, 106 S.Ct. at 2770, the Supreme Court stated:

> ... the degree of racial bloc voting that is cognizable as an element of a § 2 vote dilution claim will vary according to a variety of factual circumstances. Consequently, there is no simple doctrinal test for the existence of legally significant racial bloc voting.

The Defendants over-simplify the test by attempting to show that because Mr. Hickson has been elected to the city council for over twenty-one (21) years, Plaintiffs cannot show polarized voting. In discussing the legal significance of some African–American candidates' success, the Supreme Court quoted

from § 2(b): "[t]he extent to which members of a protected class have been elected to office ... is one circumstance which may be considered." The Supreme Court went on:

> However, the Senate Report expressly states that "the election of a few minority candidates does not necessarily foreclose the possibility of dilution of the black vote" ... proof that some minority candidates have been elected does not foreclose a § 2 claim.

*Gingles,* 478 U.S. at 75, 106 S.Ct. at 2779.

 Finally, a vote dilution claim must be considered in light of the totality of the circumstances:

> As both amended § 2 and its legislative history make clear, in evaluating a statutory claim of vote dilution through districting, the trial court is to consider the "totality of the circumstances" and to determine, based "upon a searching practical evaluation of the 'past and present reality' " [citation omitted] whether the political process is equally open to minority voters. "This determination is peculiarly dependent upon the facts of each case," [citations omitted] and requires "an intensely local appraisal of the design and impact" of the contested electoral mechanisms. [citations omitted]

*Gingles,* 478 U.S. at 79, 106 S.Ct. at 2781. Under the totality of the circumstances, Plaintiffs' ability to meet the third necessary precondition is a genuinely disputed material issue of fact which precludes summary judgment.

Moreover, Defendants' Motion does not address Plaintiffs' claim of African–Americans' inability to *nominate* candidates of their choice, as shown by the fact that since 1963, only four (4) African–Americans have run for city council. Further, Defendants' contention that Plaintiffs must first identify their candidates of choice is not supported by case law, especially when Plaintiffs attack § 2 based on the deterrent effect of the at-large election method.

Defendants' Motion over-simplifies the Supreme Court's requirement for addressing and proving polarized voting, and it does not address the core of Plaintiffs' complaint. Thus, summary judgment is precluded be-

cause there are genuine issues of material fact to be determined by a trial on the merits. Accordingly it is

**ORDERED** that Defendants' Motion for Summary Judgment (Docket No. 35) in Case No. 91–40–CIV–FTM–17 be **denied.** It is further **ordered** that Plaintiffs' Motion for Summary Judgment (Docket No. 32) in Case No. 90–366–CIV–FTM–17 be **granted in part** as to the at-large method of electing School Board officials, and **denied in part** as to the at-large method of electing the Board of County Commissioners. The parties **shall have** ten (10) days from the filing of this order to agree on and submit to this Court for approval, a single-district plan for the election of School Board members. If the parties fail to agree, Plaintiffs **shall have** ten (10) days thereafter to submit a proposed plan to this Court, and Defendants **shall have** ten (10) days thereafter to file objections and an alternative plan.

It is further **ordered** that Defendants are hereby **enjoined** from using the at-large election method, pursuant to §§ 230.08 and 230.10, Florida Statutes, for future elections of School Board members.

**DONE and ORDERED.**